UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
-----------------------------------------------------------X
CHANTEL MATTHEWS,

            Plaintiff,

-against-

UNITED CONTINENTAL HOLDINGS, INC.
d/b/a UNITED AIRLINES INC., and
FREDERICK HILL, individually,

            Defendants.
-----------------------------------------------------------X

Civ. No.: 2:25-cv-12895

**COMPLAINT**

Plaintiff Demands A
Trial By Jury

Plaintiff CHANTEL MATTHEWS (hereinafter referred to as "Plaintiff") by and through her attorneys, DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendants UNITED CONTINENTAL HOLDINGS, INC. d/b/a UNITED AIRLINES INC. (hereinafter referred to as "UNITED") and FREDERICK HILL, individually (hereinafter referred to as "HILL"), (hereinafter collectively referred to as "Defendants") upon information and belief as follows:

**NATURE OF CASE**

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), and to remedy violations of the New Jersey Law Against Discrimination ("NJLAD"), based upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs,* 383 U.S. 715 (1966) and 28 U.S.C. § 1367, seeking declaratory and injunctive relief and damages to redress the injuries that Plaintiff has suffered as a result of, *inter alia,* sex/gender discrimination, sexual harassment, hostile work environment, and retaliation.

## JURISDICTION AND VENUE

2. Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII. The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

3. Additionally, this Court has supplemental jurisdiction under the State law causes of action asserted in this action.

4. On or about April 8, 2025, Plaintiff received a Right to Sue Letter from the EEOC.

5. Plaintiff has satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the Right to Sue Letter.

6. Venue is proper in this District based upon the fact that the events or omissions which gave rise to the claims asserted herein occurred within the District of New Jersey.

## PARTIES

7. Plaintiff CHANTEL MATTHEW (hereinafter referred to as "Plaintiff") is an individual woman who is a resident of the State of New Jersey, County of Sussex.

8. At all times material, Defendant UNITED CONTINENTIAL HOLDINGS, INC. d/b/a UNITED AIRLINES INC. (hereinafter referred to as "UNITED") was and is a foreign for-profit corporation duly existing by the virtue and laws of the State of Illinois that does business in the State of New Jersey.

9. At all times material, Defendant UNITED employed Defendant FREDERICK HILL (hereinafter referred to as "HILL") as Company Training Supervisor.

10. At all times material, Defendant UNITED and Defendant HILL are collectively referred to as "Defendants").

11. At all times material, Defendant HILL held supervisory authority over Plaintiff and had the ability to take adverse employment actions against Plaintiff.

## MATERIAL FACTS

12. At all times material, Defendant UNITED employed Miriam W. [Last Name Unknown] (hereinafter referred to as "MIRIAM") as Human Resources Manager.

13. At all times material, MIRIAM held supervisory authority over Plaintiff and had the ability to take adverse employment actions against Plaintiff.

14. At all times material, Defendant UNITED employed Mr. Gonzalez [Name Unknown] (hereinafter referred to as "GONZALEZ") as a Team Lead.

15. At all times material, GONZALEZ held supervisory authority over Plaintiff and had the ability to take adverse employment actions against Plaintiff.

16. At all times material, Defendant UNITED employed Amy [Last Name Unknown] (hereinafter referred to as "AMY") as a Supervisor.

17. At all times material, AMY held supervisory authority over Plaintiff and had the ability to take adverse employment actions against Plaintiff.

18. At all times material, Defendant UNITED employed Whitney V. [Last Name Unknown] (hereinafter referred to as "WHITNEY") as Transition Duty Manager.

19. At all times material, WHITNEY held supervisory authority over Plaintiff and had the ability to take adverse employment actions against Plaintiff.

20. On or about November 1, 2022, Defendant UNITED hired Plaintiff as a Ramp Service Employee at Newark International Liberty Airport, Terminal C, Newark, New Jersey 07114.

21. From the onset of Plaintiff's employment, Defendant UNITED's Company Training Supervisor, Defendant HILL, began sexually harassing Plaintiff.

22. On or about November 1, 2022, Plaintiff reported to training for her first day of work for Defendants.

23. Plaintiff was greeted by Defendant HILL who told Plaintiff, "I've never seen anyone like you before. [Defendant UNITED] saved the best for last." Plaintiff responded, "Excuse me?" and HILL responded, "Welcome to United. **You are fine as hell**. Please complete your employee profile at any computer desk." Plaintiff was stunned and extremely uncomfortable by HILL's unwelcome sexual advances.

24. Later that day, Defendant HILL approached Plaintiff and asked if Plaintiff needed help. Defendant HILL asked Plaintiff, "By the way, do you model?" Plaintiff rebuffed HILL's unwelcome comments and said, "I'm fine, thanks. I got it from here."

25. On or about November 2, 2022, Defendant HILL improperly accessed Plaintiff's phone number from her personnel file and sent Plaintiff a text message asking Plaintiff to send him her Instagram profile. Defendant HILL's unsolicited message caused Plaintiff to feel anxious and deeply uncomfortable. Plaintiff did not respond to HILL. By ignoring Defendants HILL's message, Plaintiff demonstrated that she was not romantically interested in HILL and attempted to dissuade him from further contact.

26. However, upon Plaintiff's arrival to work that day, Defendant HILL greeted Plaintiff, "Good morning, Ms. Matthews. You look very nice today. **Your body is banging**." HILL made this unwelcome sexual comment within earshot of Plaintiff's coworkers. Plaintiff was embarrassed and even more uncomfortable.

27. Prior to the end of her shift, Plaintiff exited the room to use the restroom. Upon leaving the room, Defendant HILL was waiting for Plaintiff in the hallway and asked Plaintiff if he could take her on a date.

28. Plaintiff rejected HILL's unwelcome advance and informed Defendant HILL that she was in a relationship and not interested.

29. Later that day, Defendant HILL approached Plaintiff and asked, "Can I buy you lunch?" Once again, Plaintiff declined HILL's offer.

30. Despite Plaintiff's continued rejection of Defendant HILL's unwelcome sexual advances, Defendant HILL continued to subject Plaintiff to a hostile work environment on the basis of her sex/gender.

31. That afternoon, another trainer who had witnessed Defendant HILL sexually harassing Plaintiff, advised Plaintiff, "This is nothing. Wait until you get out in the field," alluding that HILL's sexual harassment would only get worse, and that employees of Defendant UNITED were aware of HILL's sexual harassment.

32. That evening, around 11:21p.m., Defendant HILL texted Plaintiff again inquiring what kind of men Plaintiff was interested in. Again, Plaintiff ignored HILL's message.

33. On or about November 3, 2022, the following day, Defendant HILL approached Plaintiff asking, "So, Ms. Matthews, you didn't see my text last night with your sexy self?" Plaintiff responded, "What are you talking about? Please do not speak to me like that," and proceeded to sit at an open computer desk.

34. Shortly thereafter, Defendant HILL approached Plaintiff at her desk saying, "You know I want you, right?" Aggravated, Plaintiff responded, "You just will not stop."

35. Later that day, Defendant HILL texted Plaintiff inquiring what her intentions were for him as well as the type of chemistry and energy in a romantic partner that interested Plaintiff. Plaintiff did not respond.

36. Moreover, HILL asked, "You busy?" Plaintiff responded that she was asleep and exhausted in hopes that HLL would leave her alone. However, HILL continued by messaging Plaintiff again instructing her to change her phone screensaver to a photo of HILL for motivation.

37. Despite Plaintiff ignoring HILL's message, HILL texted Plaintiff again at around 10:18p.m. asking, "How long have you been modeling? Can you talk?"

38. At approximately 10:40p.m., Defendant HILL attempted to Facetime Plaintiff. Plaintiff did not answer.

39. At all times material, Plaintiff rejected Defendant HILL's unwelcome sexual advances.

40. On or about November 4, 2022, the following day, Defendant HILL began retaliating against Plaintiff for refusing his sexual advances.

41. By way of example only, despite wearing the same navy-blue plants and black shoes that she had worn every day prior, Defendant HILL shouted at Plaintiff, "MS. MATTHEWS, YOU ARE OUT OF COLOR CODE!" Plaintiff responded, "Excuse me? How am I out of color code? What is this? I have on the exact same navy-blue pants & black shoes which I wore yesterday so what is this all about, Mr. Hill?" HILL responded, "Don't worry about it. I'm simply going to report you." Claimant asked, "Report me for what? What did I do?" HILL refused to tell Plaintiff what he was going to report her for.

42. At all times material, Defendant HILL abused his supervisory role to embarrass and humiliate Plaintiff in front of her coworkers in retaliation against Plaintiff for refusing HILL's sexual advances.

43. Plaintiff informed Defendant HILL that he needed to refrain from shouting at Plaintiff, that HILL bullied Plaintiff for no reason, that HILL was misusing his authority, and that Plaintiff was going to file a report with Defendant UNITED against HILL.

44. Defendant HILL responded, "Ms. Matthews, you can try. Shit is not going to happen to me. I have been with United for nineteen (19) years." Plaintiff walked away discouraged.

45. On or about November 10, 2022, after Defendant HILL left the room, one of Defendants' other trainees Trevor A. [Last Name Unknown] ("TREVOR") told Plaintiff that he noticed Defendant HILL's inappropriate behavior towards her. TREVOR said, "I have seen Mr. Hill come into our new classroom, grab cups of water from our water dispenser when in fact he had one accessible in his own class. He is just doing that to check you out." Plaintiff responded, "Wow you noticed, too?"

46. While Plaintiff and TREVOR were talking about Defendant HILL, one of Defendants' other trainees, a male employee named Santiago D. [Last Name Unknown] ("SANTIAGO"), began accusing Plaintiff and TREVOR of "talking smack" about SANTIAGO. Despite Plaintiff and TREVOR telling SANTIAGO that they were talking about HILL, SANTIAGO got increasingly aggressive and continued to insist that Plaintiff and TREVOR were "talking smack" about SANTIAGO. SANTIAGO began screaming very close to Plaintiff's face causing Plaintiff to flee the room in tears.

47. Thereafter, trainers from other rooms became aware of the increasingly hostile situation and stepped in to diffuse SANTIAGO's rage.

48. Upon Defendant HILL's return, to the room, he instructed Plaintiff and SANTIAGO to go alone into the instructors' lounge and proceeded to lock the door, leaving Plaintiff alone and trapped with her aggressor, SANTIAGO. Terrified, Plaintiff yelled, "Why are you locking me in this room when SANTIAGO just tried to attack me?! Let me out right now!" and began banging on the door. Through the door HILL said, "None of this needs to leave the training facility." Plaintiff responded, "Holding me in a room with someone who just tried to attack me

is torture. Unlock the door!" HILL instructed SANTIAGO to apologize to Plaintiff. Eventually, SANTIAGO apologized to Plaintiff and HILL opened the door. Shocked and terrified, Plaintiff returned to her desk.

49. Defeated, Plaintiff left the training center and called the recruiter who connected Plaintiff with her position for Defendant UNITED, Steve B. [Last Name Unknown] ("STEVE"), to report Defendant HILL's sexual harassment as well as the altercation with SANTIAGO. STEVE instructed Plaintiff to submit a report to Defendant UNITED's Human Resources Manager Miriam W. [Last Name Unknown] ("MIRIAM").

50. Immediately thereafter, Plaintiff reported Defendant HILL's sexual harassment and the altercation with SANTIAGO to MIRIAM. MIRIAM instructed Plaintiff to email her with a written statement which Plaintiff provided.

51. Throughout the week thereafter, Plaintiff overheard various coworkers pointing Plaintiff out saying, "That's the girl trying to get Mr. Hill fired."

52. Despite Defendants' increasingly hostile work environment, Plaintiff successfully completed Defendant UNITED's Core 4 Training and became a Marshaller, Security Checklist Operator, and a Domestic and International Baggage Claim Operator.

53. However, on or about November 16, 2022, Defendants retaliated against Plaintiff by transferring Plaintiff to Defendant UNITED's command center. There, Plaintiff was introduced to Defendant UNITED's Team Lead Mr. Gonzalez [Name Unknown] ("GONZALEZ"). GONZALEZ then instructed Plaintiff to remove a 300-pound dead body from one of Defendant UNITED's planes.

54. Plaintiff attempted to move the 300-pound dead body. However, Plaintiff was not able to move the body due to its weight. GONZALEZ threatened Plaintiff that she would be terminated if she was not able to perform her job duties, namely moving the 300-pound dead body.

55. Plaintiff immediately contacted Defendant UNITED's Supervisor Amy [Last Name Unknown] ("AMY") to explain that she was incapable of moving the heavy dead body on her own. Similarly, AMY threatened that if Plaintiff could not perform her duties, namely moving the 300-pound dead body, Plaintiff would be sent home.

56. As such, Plaintiff again attempted to move the body which caused her to fall and scream out in pain.

57. Thereafter, Plaintiff was transported to Defendant UNITED's health center where Medical Director Dr. Darmadi Khong diagnosed Plaintiff with severe neck and shoulder muscle strains. Dr. Khong prescribed Plaintiff with a muscle relaxant and placed Plaintiff on light duty. Upon hearing what transpired, Dr. Khong advised Plaintiff, "This should not have happened to you."

58. Then, Plaintiff went to AMY's office to document the incident as well as Plaintiff's injuries. AMY advised Plaintiff to write a statement about the incident. Plaintiff wrote out her statement and provided it to AMY who proceeded to type it up. However, Plaintiff noticed that AMY was deleting significant and relevant portions of Plaintiff's statement. Plaintiff asked AMY why she was altering Plaintiff's statement and AMY said, "It does not concern you," and shooed Plaintiff out of her office.

59. As a result of the injury, Plaintiff was forced to undergo seven (7) months of physical therapy and continues to deal with the ongoing injury.

60. On or about November 23, 2022, an investigator by the name of Reyna Kohlman ("KOHLMAN") emailed Plaintiff advising her that she was hired by Defendant UNITED to

investigate Defendant HILL's sexual harassment of Plaintiff. Moreover, KOHLMAN requested to speak with Plaintiff over the phone or via Microsoft Teams on a date that Plaintiff was not working.

61. On or about December 1, 2022, Plaintiff receiving an email from Defendant UNITED's Transitional Duty Manager Whitney V. [Last Name Unknown] ("WHITNEY") stating to contact WHITNEY regarding Plaintiff's light duty. Plaintiff attempted to call WHITNEY as directed and left a voicemail.

62. Thereafter, Plaintiff attempted to call WHITNEY a second time. WHITNEY answered curtly stating, "You're the one I heard about." Plaintiff responded, "Heard about?" WHITNEY said, "Never mind. I will be sending your correspondence in the mail," and abruptly hung up.

63. On or about December 2, 2022, Plaintiff met with KOHLMAN over Microsoft Teams to discuss Defendant HILL's sexual harassment and retaliation as well as the hostile work environment. Moreover, Plaintiff requested that she not have to interact with HILL or SANTIAGO directly.

64. On or about December 3, 2022, one of Defendant UNITED's female employees that Plaintiff did not know approached Plaintiff and said, "Word around here is to stay away from you." Plaintiff replied, "Who told you this?" but the female employee did not answer.

65. Later that day, another female employee [Name Unknown] approached Plaintiff saying that she heard about Defendant HILL's sexual harassment as well as the incident with SANTIAGO. The female employee said, "Mr. Hill did the same thing to me. It's okay. I use it to my advantage. It's not what you know, it's who you know." Plaintiff immediately reported this to MIRIAM.

66. On or about March 15, 2023, WHITNEY emailed Plaintiff stating that Plaintiff reached Defendant UNITED's maximum 90-day transitional duty period, instructed Plaintiff not to return to work, and stated that a workers compensation insurance claim adjuster from Sedgwick would be reaching out to Plaintiff.

67. At all times material, Plaintiff did not receive any kind of communication from Sedgwick.

68. Thereafter, Plaintiff contacted Dr Khong and asked for Sedgwick's contact information. During this conversation, Dr. Khong advised Plaintiff, "This is what United does; they do not treat their employees fairly."

69. On or about April 12, 2023, KOHLMAN emailed Plaintiff stating that Defendant UNITED completed its investigation into Plaintiff's claims and found that HILL violated Defendant UNITED's guidelines and that the matter was being passed along to the appropriate parties in order to address Defendant HILL's sexual harassment.

70. Despite this, it is believed that Defendant UNITED continues to employ Defendant HILL and has not taken any remedial or corrective action against HILL. As such, Defendant HILL's role training new employees continues to provide fertile ground for his predatory behaviors and sexual harassment.

71. On or about November 28, 2023, Defendant UNITED provided Plaintiff with a work separation letter, unlawfully terminating Plaintiff effective immediately.

72. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

73. As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress.

74. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

75. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

76. Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

77. Defendants discriminated against Plaintiff because of her sex/gender, and because she complained or opposed the unlawful conduct of Defendants related to the aforementioned protected class.

78. Plaintiff claims alternatively (only in the event Defendants claims so or that the Court determines) that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable laws pertaining to Independent Contractors.

79. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against Defendants, jointly and severally.

80. The above are just some of the examples of unlawful and discriminatory conduct to which Defendants subjected Plaintiff.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
## (AGAINST DEFENDANT UNITED)

81. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

82. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a) [Section 703] provides that it shall be an unlawful employment practice for an employer: "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . .."

83. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by subjecting Plaintiff to discrimination on the basis of her sex/gender, together with causing a hostile work environment based on the same.

84. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Title VII.

85. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER TITLE VII
## (AGAINST DEFENDANT UNITED)

86. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

87. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified,

assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

88. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

89. Defendants violated the above and Plaintiff suffered numerous damages as a result.

<strong><u>AS A THIRD CAUSE OF ACTION<br>FOR DISCRIMINATION UNDER NEW JERSEY STATE LAW</u><br>(AGAINST ALL DEFENDANTS)</strong>

90. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

91. New Jersey's Law Against Discrimination ("NJLAD") Section 10:5-12(a) sets forth in pertinent part as follows: "It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination: (a) For any employer, because of the race, creed, color, national origin, ancestry, age, marital status, civil union status, domestic partnership status, affectional or sexual orientation, genetic information, sex, gender identity or expression, disability or atypical hereditary cellular or blood trait of any individual, or because of the liability for service in the Armed Forces of the United States or the nationality of any individual, or because of the refusal to submit to a genetic test or make available the results of a genetic test to an employer, to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

92. Defendants engaged in unlawful discriminatory practices prohibited by NJLAD Section 10:5 et seq., by discriminating against the Plaintiff because of her sex/gender, together with causing a hostile work environment based on the same.

93. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the NJLAD Section 10.

94. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A FOURTH CAUSE OF ACTION
### FOR RETALIATION UNDER NEW JERSEY STATE LAW
### (AGAINST ALL DEFENDANTS)

95. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

96. New Jersey Law Against Discrimination §10:5-12(d) provides that it shall be an unlawful discriminatory practice: "For any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted by this act."

97. Defendants engaged in unlawful discriminatory and retaliatory practices prohibited by NJLAD Section 10:5 et seq., by retaliating and otherwise discriminating and/or retaliating against Plaintiff because of Plaintiff's opposition to Defendants' unlawful employment practices.

98. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A FIFTH CAUSE OF ACTION
## FOR AIDING AND ABETTING UNDER NEW JERSEY STATE LAW
## (AGAINST ALL DEFENDANTS)

99. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

100. New Jersey Law Against Discrimination §10:5-12(e) provides that it shall be an unlawful discriminatory practice: "For any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so."

101. Defendants engaged in unlawful discriminatory practices prohibited by NJLAD Section 10:5 et seq., by aiding, abetting, inciting, compelling and/or coercing the discriminatory, unlawful, and retaliatory conduct as stated herein.

102. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## JURY DEMAND

Plaintiff demands a jury trial on all issues to be tried.

WHEREFORE, Plaintiff respectfully requests a judgment against the Defendants in an amount to be determined at trial for all emotional distress, lost wages, back and front pay, punitive damages, liquidated and statutory damages, attorneys' fees, costs and interest and awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practice(s).

Dated: New York, New York
July 7, 2025

**DEREK SMITH LAW GROUP, PLLC**
*Attorneys for Plaintiff*

_____
Zachary Holzberg, Esq.

450 7th Avenue, Floor 30
New York, New York 10123
(212) 587-0760