<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| CHANTEL MATTHEWS,<br><br>           Plaintiff,<br><br>           v.<br><br>UNITED AIRLINES, INC, and<br>FREDERICK HILL, individually,<br><br>           Defendants. | Case No. 2:25-cv-12895 (BRM) (LDW)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendants United Airlines, Inc. ("United") and Frederick Hill's ("Hill") (together, "Defendants") Motion to Dismiss ("Motion") (ECF No. 19) Plaintiff Chantel Matthew's ("Matthews") Complaint (ECF No. 1) pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim upon which relief can be granted. Matthews filed an Opposition to Defendants' Motion on February 11, 2026 (ECF No. 27), and Defendants filed a Reply on February 27, 2026 (ECF No. 30). Having reviewed and considered the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Rule 78(b), for the reasons set forth below and for good cause having been shown, Defendants' Motion to Dismiss (ECF No. 19) is **GRANTED IN PART** and **DENIED IN PART**.

## I.   BACKGROUND

For purposes of this Motion, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Matthews. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d

1

1410, 1426 (3d Cir. 1997) (emphasis in original) (citation omitted).

### A.  Factual Background

This is an employment discrimination matter involving Matthews's allegations that United discriminated against her on the basis of gender/sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the New Jersey Law Against Discrimination ("NJLAD") (ECF No. 1 ¶ 1.) Matthews is a woman. (*Id.* ¶ 7.) She was an employee of United from November 1, 2022, until November 28, 2023, when United terminated her. (*Id.* ¶ 20, 71.)

From the onset of Matthews's employment at United, a Company Training Supervisor named Hill "began sexually harassing" her. (*Id.* ¶¶ 9, 20–24.) On her first day, Hill greeted Matthews by saying "I've never seen anyone like you before. [United] saved the best for last . . . . Welcome to United. You are fine as hell. Please complete your employee profile at any computer desk." (*Id.* ¶ 23.) Hill's sexual advances left Matthews "stunned and extremely uncomfortable." (*Id.*) Later that day, Hill not only approached Matthews and asked if she needed help, but also asked, "[D]o you model?" (*Id.* ¶ 24.) Matthews "rebuffed" Hill's "unwelcome comments and said, 'I'm fine, thanks. I got it from here.'" (*Id.*)

The next day, Hill "improperly accessed [Matthews's] phone number from her personnel file and sent [her] a text message asking [her] to send him her Instagram profile." (*Id.* ¶ 25.) Made to feel "anxious and deeply uncomfortable" by Hill's "unsolicited message," Matthews ignored the text message as an "attempt[] to dissuade him from further contact." (*Id.*) But upon her arrival to work on November 2, 2022, Hill stated the following "within earshot" of Matthews's coworkers: "Good morning, Ms. Matthews. You look very nice today. Your body is banging." (*Id.* ¶ 26.) Later that day, Matthews went to use the restroom. (*Id.* ¶ 27.) Hill "was waiting for Plaintiff in the hallway and asked [her] if he could take her on a date." (*Id.*) Matthews informed Hill "she was in

a relationship and not interested." (*Id.* ¶ 28.) Later that day, Hill approached Matthews again and asked if he could buy her lunch. (*Id.* ¶ 29.) Matthews declined the offer. (*Id.*) That afternoon, another Company Training Supervisor "who had witnessed . . . [Hill] sexually harassing" Matthews advised her, "This is nothing. Wait until you get out in the field." (*Id.* ¶ 31.) Matthews took this to mean that Hill's "sexual harassment would only get worse, and that employees of . . . [United] were aware of [Hill's] sexual harassment." (*Id.*) Undeterred, "around 11:21 p.m.," Hill texted Matthews again inquiring what kind of men she was interested in. (*Id.* ¶ 32.) Matthews did not respond. (*Id.* ¶ 32.)

On November 3, 2022, Hill approached Matthews and asked, "So, Ms. Matthews, you didn't see my text last night with your sexy self?" (*Id.* ¶ 33.) After telling Hill not "to speak to [her] like that," Matthews proceeded to sit at an open computer desk. (*Id.*) "Shortly thereafter," Hill approached Plaintiff at her desk and said, "You know I want you right?" (*Id.* ¶ 34.) "Aggravated, [Matthews] responded, 'You just will not stop.'" (*Id.*) Later that day, Hill "texted [Matthews] inquiring what her intentions were for him" and what "type of chemistry and energy in a romantic partner interested" her. (*Id.* ¶ 35.) Matthews "did not respond." (*Id.*) Hill also asked Matthews if she was busy, to which she responded that she was "asleep and exhausted," "hop[ing] that [Hill] would leave her alone." (*Id.* ¶ 36.) But Hill "continued . . . messaging [Matthews,] instructing her to change her phone screensaver to a photo of [him] for motivation." (*Id.*) Matthews ignored Hill's message, but Hill texted her again around 10:18 pm asking, "How long have you been modeling? Can you talk?" (*Id.* ¶ 37.) Around twenty minutes later, Hill tried to FaceTime Matthews, but she did not answer. (*Id.* ¶ 38.)

According to Matthews, on November 4, 2022, Hill began retaliating against her for refusing his sexual advances. (*Id.* ¶ 40.) For instance, "despite wearing the same navy-blue pants

3

and black shoes that she had worn every day prior, . . . [Hill] shouted at plaintiff, 'Ms. Matthews, you are out of color code!'" (*Id.* ¶ 41.) After Matthews asked for clarification, Hill responded, "Don't worry about it. I'm simply going to report you." (*Id.*) When Matthews asked what Hill was reporting her for, he "refused to tell [her]." (*Id.*) Matthews "informed . . . [Hill] that he needed to refrain from shouting at [her], that [he] bullied [her] for no reason, that [he] was misusing his authority, and that [she] was going to file a report with . . . [United]." (*Id.* ¶ 43.) In response, Hill said, "[Y]ou can try. Shit is not going to happen to me. I have been with United for nineteen . . . years." (*Id.* ¶ 44.)

On November 10, 2022, after Hill left, "one of Defendants' other trainees, Trevor A." ("Trevor"), told Matthews he had noticed Hill's inappropriate behavior towards her. (*Id.* ¶ 45.) Trevor shared he had seen Hill come into the room to grab cups of water even though Hill had one accessible in his own room "just . . . to check [Matthews] out." (*Id.*) During this conversation, "one of Defendants' other trainees, a male employee named Santiago D." ("Santiago"), "began accusing [Matthews] and [Trevor] of 'talking smack' about [Santiago]." (*Id.* ¶ 46.) Matthews and Trevor tried to clarify who it was they were talking about, but Santiago still "got increasingly aggressive and continued to insist" Matthews and Trevor were talking about him, and "began screaming very close to [Matthews's] face[,] causing [her] to flee the room in tears." (*Id.*) "[T]rainers from other rooms became aware of the increasingly hostile situation and stepped in to diffuse" the situation. (*Id.* ¶ 47.)

When Hill returned, he instructed Matthews and Santiago "to go alone into the instructors' lounge and proceeded to lock the door, leaving [Matthews] alone and trapped with . . . Santiago." (*Id.* ¶ 48.) Matthews was "terrified." (*Id.*) She "yelled, 'Why are you locking me in this room when [Santiago] just tried to attack me?[] Let me out right now!'" and "began banging on the door." (*Id.*)

"Through the door[,] [Hill] said, 'None of this needs to leave the training facility.'" (*Id.*) Matthews responded, "Holding me in a room with someone who just tried to attack me is torture. Unlock the door!" (*Id.*) Hill instructed Santiago to apologize to Matthews, and Santiago eventually did so, leading Hill to open the door. (*Id.*) "Shocked and terrified, [Matthews] returned to her desk." (*Id.*)

Matthews "left the training center and called the recruiter who connected [her] with her position [at] . . . [United], Steve B." ("Steve"), to report . . . [Hill's] sexual harassment[,] as well as the altercation with" Santiago. (*Id.* ¶ 49.) Steve told Matthews to "submit a report to . . . [United's] Human Resources Manager Miriam W." ("Miriam"). (*Id.*) After so doing, Miriam instructed Matthews "to email her with a written statement[,] which [ Matthews] provided." (*Id.* ¶ 50.) After submitting her statement, Matthews "overheard" various coworkers refer to her as "the girl trying to get Mr. Hill fired." (*Id.* ¶ 51.) Notwithstanding the "increasingly hostile work environment," Matthews "completed . . . [United's] Core 4 Training and became a Marshaller, Security Checklist Operator, and a Domestic and International Baggage Claim Operator." (*Id.* ¶ 52.)

On November 16, 2022, Defendants "transferr[ed]" Matthews to United's Command Center, where she was introduced to United's Team Lead, "Mr. Gonzalez" ("Gonzalez"), who "instructed [her] to remove a 300-pound dead body from one of . . . [United's] planes." (*Id.* ¶ 53.) Matthews "attempted to move the body" but was unable to because of its weight. (*Id.* ¶ 54.) Gonzalez "threatened" Matthews that she would be "terminated if she was [unable] to . . . mov[e] the . . . body." (*Id.*) Matthews contacted United's "Supervisor," Amy ("Amy") "to explain that she was incapable of moving the heavy dead body on her own." (*Id.* ¶ 55.) Like Gonzalez, Amy "threatened that if [Matthews] could not perform her duties, namely moving the . . . body, [she]

would be sent home." (*Id.*) Again, Matthews tried to move the body, which "caused her to fall and scream out in pain." (*Id.* ¶ 56.)

Matthews was transported to United's health center, where Medical Director Dr. Darmadi Khong ("Dr. Khong") diagnosed Matthews with "severe neck and shoulder muscle strains, . . . prescribed [her] with a muscle relaxant[,] and placed [her] on light duty." (*Id.* ¶ 57.) "Upon hearing what transpired, Dr. Khong advised [Matthews], 'This should not have happened to you.'" (*Id.*) Afterwards, Matthews went to Amy's office "to document the incident [and] [her] injuries." (*Id.* ¶ 58.) Per Amy's advice, Matthews "wrote [a] statement and provided it to [Amy] to type . . . up." (*Id.*) Matthews noticed Amy "was deleting significant and relevant portions of [her] statement," so she asked Amy why she was doing so. (*Id.*) After telling Matthews it was of no concern to her, Amy "shooed [her] out of her office." (*Id.*) Because of the injury, Matthews had to "undergo seven . . . months of physical therapy and continues to deal with the ongoing injury." (*Id.*)

On November 23, 2022, an investigator, Reyna Kohlman ("Investigator Kohlman"), emailed Matthews, advising her that United had hired her "to investigate . . . [Hill's] sexual harassment" of Matthews, and "requested" to speak with Matthews remotely on a date Matthews was not working. (*Id.* ¶ 60.) Around a week later, Matthews "receiv[ed] an email from . . . [United's] Transitional Duty Manager, Whitney V." ("Whitney"), which stated that Matthews should contact her regarding Matthews's light duty. (*Id.* ¶ 61.) Matthews tried to call Whitney and left a voicemail. (*Id.*) When Matthews tried to call Whitney for a second time, Whitney answered and said, "You're the one I heard about." (*Id.* ¶ 62.) After Matthews sought clarification, Whitney said, "Never mind. I will be sending your correspondence in the mail," and "abruptly hung up." (*Id.*)

The day after her call with Whitney, December 2, 2022, Matthews met with Investigator Kohlman over Microsoft Teams "to discuss . . . [Hill's] sexual harassment[,] . . . retaliation[,] [and] the hostile work environment." (*Id.* ¶ 63.) During the call, Matthews "requested that she not have to interact with [Hill] or [Santiago] directly." (*Id.*)

On December 3, 2022, a female employee at United, who Matthews did not know, approached Matthews and said, "Word around here is to stay away from you." (*Id.* ¶ 64.) Matthews "replied, 'Who told you this?'" (*Id.*) But the female employee did not answer. (*Id.*) "Later that day, another female employee . . . approached [Matthews], saying . . . she heard about . . . [Hill's] sexual harassment[,] as well as the incident with" Santiago. (*Id.* ¶ 65.) "The female employee said, 'Mr. Hill did the same thing to me. It's okay. I use it to my advantage. It's not what you know, it's who you know.'" (*Id.*) Matthews "immediately reported this to" Miriam, United's Human Resources Manager. (*Id.*)

A little over three months later, on March 15, 2023, Whitney "emailed [Matthews] stating that [Matthews] [had] reached . . . [United's] maximum 90-day transitional duty period, instructed [her] not to return to work, and stated that a workers compensation insurance claim adjuster from Sedgwick would be reaching out to [her]." (*Id.* ¶ 66.) According to Matthews, "[a]t all times material, [she] did not receive any kind of communication from Sedgwick." (*Id.* ¶ 67.) "Thereafter, [Matthews] contacted Dr[.] Khong and asked for Sedgwick's contact information." (*Id.* ¶ 68.) Dr. Khong informed Matthews, "This is what United does[.] [T]hey do not treat their employees fairly." (*Id.*)

On April 12, 2023, Investigator Kohlman emailed Matthews, stating that United had "completed its investigation into [Matthews's] claims and found that [Hill] [had] violated . . . [United's] guidelines and that the matter was being passed along to the appropriate parties . . . to

address . . . [Hill's] sexual harassment." (*Id.* ¶ 69.) "Despite this, . . . [United] continues to employ . . . [Hill] and has not taken any remedial or corrective action against [Hill]." (*Id.* ¶ 70.) Around seven months later—on November 28, 2023—United provided Matthews with a work separation letter, "terminating [Matthews] effective immediately." (*Id.* ¶ 71.)

### B. Procedural History

On March 7, 2024, Matthews filed a Charge of Discrimination ("Charge"), alleging gender/sex discrimination and retaliation in violation of Title VII and the NJLAD with the Equal Employment Opportunity Commission ("EEOC") (ECF No. 19-2 at 4.),[1] which is automatically dual filed with the New Jersey Division on Civil Rights.[2] *Foster v. N.J. Dep't of Transp.*, Civ. A. No. 04-101, 2005 WL 3542462, *3 n.3 (D.N.J. Dec. 27, 2005), *aff'd*, 255 F. App'x 670 (3d Cir. 2007) ("The EEOC and the . . . NJDCR . . . have a worksharing agreement."). The EEOC issued a right to sue notice on April 8, 2025. (ECF No. 1 ¶ 4.) On July 7, 2025, Matthews filed the Complaint initiating this action. (ECF No. 1.) Defendants moved the Court to dismiss Matthews's Complaint on January 9, 2026.[3] (ECF No. 19.) Matthews opposed the Motion on February 11,

---

[1] While Matthews's Complaint does not set forth the date on which Plaintiff filed her Charge (*see* ECF No. 1), courts may consider a document outside the pleadings on a motion to dismiss if it is "integral to or explicitly relied upon in the complaint," or "an undisputedly authentic document that a defendant attaches as an exhibit . . . if the plaintiff's claims are based on the document," such as an EEOC charge. *See, e.g.*, *Evans v. Port Auth. of N.Y. & N.J.*, Civ. A. No. 06-3239, 2007 WL 3071808, at * 4, 11, n. 5 (D.N.J. Oct. 18, 2007) (quoting *In re Burlington Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)) (emphasis in original) (noting plaintiff's EEOC charge is "integral to [p]laintiff's Title VII claims"). Here, a screenshot of the EEOC portal reflecting Matthews's March 7, 2024 Charge of Discrimination was attached as an exhibit accompanying a certification by Jennifer Casazza Carter, Esq., which Defendants included with their Motion. (ECF No. 19-2 at 4.)

[2] Defendants do not contest that because Matthews "filed a charge with the EEOC," it was "automatically dual filed with the NJDCR." (ECF No. 19-1 at 10.)

[3] On February 4, 2026, Matthews filed a motion for an extension of time to file her Opposition (ECF No. 22), which the Court granted (ECF No. 25).

2026 (ECF No. 27), and Defendants replied on February 27, 2026 (ECF No. 30).

## II.    LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . ." *Id.* at 231 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, "a plaintiff's . . . obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alterations in original). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Instead, assuming factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual

9

enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the Court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. *Iqbal*, 556 U.S. at 677. This "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While the Court generally may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (emphasis in original) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342. Additionally, courts may also consider administrative filings without converting the motion to dismiss into a motion for summary judgment. *See, e.g.*, *Rogan v. Giant Eagle, Inc.*, 113 F. Supp. 2d 777, 782 (W.D. Pa. 2000), *aff'd*, 276 F.3d 579 (3d Cir. 2001) ("[W]e may consider the EEOC charge and related EEOC documents . . . either as undisputed documents referenced in the complaint or central to the plaintiff's claim . . . without converting this motion to one [for] summary judgment.").

### III. DECISION

Matthews's Complaint alleges discrimination and retaliation on the basis of her sex/gender under Title VII and the New Jersey Law Against Discrimination. (ECF No. 1.) "Title VII prohibits discriminatory employment practices based upon an individual's race, color, religion, sex, or national origin." *Shahin v. Delaware*, 424 F. App'x 90, 92–93 (3d Cir. 2011). Like Title VII, the NJLAD prohibits discrimination against individuals on the basis of "race, creed, color, national origin, ancestry, age, sex, gender identity or expression, affectional or sexual orientation, marital status." N.J. Stat. Ann. § 10:5–3. The NJLAD further prohibits an employer from taking any retaliatory action against an employee who engages in a protected activity. N.J Stat. Ann. § 10:5–12(d). In NJLAD actions for employment discrimination, courts generally follow Title VII precedent. *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 842 (3d Cir. 2016) ("This Court's discrimination inquiry is the same for claims filed under Title VII and the NJLAD . . . .") (citing *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 249 (3d Cir. 2006)). Title VII requires an aggrieved party to file a complaint with the EEOC within 300 days after an actionable

employment-related violation. 42 U.S.C. § 2000e-5(e)(1). The NJLAD has a two-year statute of limitations. *See Thomas v. Care Plus of N.J., Inc.*, 484 F. App'x 692, 693 (3d Cir. 2012).

In their Motion to Dismiss, Defendants argue all the events alleged in the Complaint—other than Matthews's termination—occurred outside the applicable statutes of limitations, rendering her non-termination-based Title VII and NJLAD claims time barred. (ECF No. 19-1 at 9–12.) With respect to the NJLAD claims against Hill, Defendants contend Matthews has "failed to articulate any cause of action that is not time barred [as] . . . the last allegation that even concerns Hill's conduct is alleged to have occurred on November 10, 2022." (*Id.* at 15.) However, with respect to Matthews's Title VII and NJLAD claims based on termination, Defendants do not contest the timeliness of the claims, which occurred on November 28, 2023, but instead take issue with how Matthews has pleaded the claims. (*Id.* at 15–16.) More specifically, with respect to her termination-based discrimination claim, Defendants claim Matthews has "merely state[d], in a conclusory manner, that she was discharged due to her sex or gender." (*Id.* at 16.) Similarly, with respect to her termination-based retaliation claim, Defendants argue Matthews has "fail[ed] to link [her] alleged protected activity to her termination." (*Id.* at 18.) Finally, Defendants argue the absence of a "principal violation" renders Matthews's aiding and abetting claim under the NJLAD fatal. (*Id.* at 21–22.)

In opposition, Matthews invokes the continuing violations doctrine to rebut Defendants' argument that her Title VII and NJLAD claims are time barred, arguing the continuing violations doctrine allows a plaintiff to pursue a claim for discriminatory conduct because at least one of those acts occurred within the statutory limitations period. (ECF No. 27 at 5–7.) Matthews also argues that for purposes of her hostile work environment claim under Title VII and the NJLAD, she has plausibly alleged that the discrimination she endured was "severe or pervasive." (*Id.* at 7.)

As to her retaliation claim, Matthews contends she has sufficiently alleged causation through a pattern of antagonism. (*Id.* at 11–12.) With respect to her aiding and abetting claim—and notwithstanding Defendants' "principal violation" argument—Matthews claims Hill "may be held individually liable under the NJLAD for aiding and abetting" his own conduct under New Jersey law. (*Id.* at 13.) Further, Matthews points out that on a motion to dismiss, the Court should not "credit [Defendants'] benign explanations, discount [her] allegations, and draw inferences in Defendants' favor." (*Id.*)

Defendants insist, in both their Motion and Reply, the continuing violations doctrine does not save Matthews's Title VII or NJLAD claims from dismissal. According to Defendants, because termination is "undisputedly a discrete act[,] . . . [Matthews's] termination . . . cannot be deemed a part of the same unlawful employment practice as any other allegation." (ECF No. 19-1 at 20–21.) Moreover, Defendants contend Matthews's reliance on the continuing violations doctrine is not only an abandonment of her disparate treatment theory, but also independently faulty because Matthews "fail[ed] to plead an essential component of a hostile work environment claim[]—namely that the conduct must have occurred 'because of' sex or gender." (ECF No. 30 at 10–12.) Additionally, Defendants urge the Court to reject Matthews's reliance on *Tillet v. Auto Zoners, LLC*, Civ. A. No. 17-7952, 2018 WL 1156229 (D.N.J. Mar. 5, 2018), for the proposition that the EEOC's issuance of a Right to Sue letter on April 8, 2025, renders her Title VII claims timely. (*Id.* at 8–9.) Defendants also argue Matthews may not rely on acts that pre-date May 12, 2023, for Title VII purposes, or before July 7, 2023, for NJLAD purposes, because any alleged acts of discrimination before those dates are time barred. (*Id.* at 11.) Defendants argue that notwithstanding Matthews's assertion of a "pattern of antagonism," the "gap of several months between protected activity and adverse action, without more, is not . . . suggestive of retaliation

and defeats any inference of causation based on temporal proximity." (*Id.* at 12–13.) Finally, Defendants assert the aiding and abetting claims against Hill must be dismissed with prejudice as a matter of law because "any NJLAD claim premised on Hill's alleged conduct is wholly outside the two-year limitations period." (*Id.* at 15.)

### A.  Matthews's Disparate Treatment Claims Are Waived or Otherwise Time Barred.

Matthews filed her Charge with the EEOC on March 7, 2024, and her Complaint on July 7, 2025. (See ECF No.1; ECF No. 30 at 4 (citing ECF No. 27 at 6).) Accordingly, but for the applicability of the continuing violations doctrine, (1) only conduct occurring on or after May 12, 2023, would be actionable under Title VII, *see* 42 U.S.C. §§ 2000e-5(e), 2000e-5(f); *Taylor v. Monmouth Med. Ctr.*, Civ. A. No. 24-6946, 2025 WL 854741, at *4 (D.N.J. Mar. 19, 2025), and (2) only conduct occurring on or after July 7, 2023, would be actionable under the NJLAD. *See Illas v. Gloucester Cnty. Sheriff's Dep't.*, Civ. A. No. 14-4061, 2015 WL 778806, at *4 (D.N.J. Feb. 24, 2015) (citing *Montells v. Haynes*, 627 A.2d 654 (N.J. 1993)). Matthews's Opposition concedes as much. (*See* ECF No. 30 at 4–5, 10–11; *see also* ECF No. 27 at 5–7.) Indeed, Matthews's response is: All the acts alleged—*including the termination*—are a part of her hostile work environment claim. (ECF No. 27 at 5–7.) Because Matthews has neither rebutted Defendants' argument that Matthews' disparate treatment claims are time barred, nor responded to Defendants' factual nexus argument (choosing instead to collapse her termination-based disparate treatment claim with her hostile work environment claim), she has effectively conceded that her non-termination-based disparate treatment claim is time barred under either Title VII or the NJLAD and waived the argument that she has put forth sufficient facts to establish a factual

14

nexus between her gender or sex with her termination.[4] Therefore, the Court will treat Matthews's disparate treatment claims as dismissed *without* prejudice with respect to her termination-based disparate treatment claim but *with* prejudice as to her non-termination-based disparate treatment claim because it is time barred. *See Doe ex rel. Doe v. Small*, 654 F. Supp. 3d 376, 387 (D.N.J. 2023) (treating unrebutted arguments as waived and dismissing without prejudice); *Lavelle v. PSE&G Gas & Elec.*, Civ. A. No. 22-5735, 2023 WL 4947371, *3 (D.N.J. Aug. 3, 2023) (dismissing an untimely Title VII claim with prejudice); *Adams v. Hult*, Civ. A. No. 14-6820, 2016 WL 5745111, *5 (D.N.J. Sept. 30, 2016) (dismissing an untimely NJLAD claim with prejudice).

### B. Matthews's Hostile Work Environment Claims Are Not Time Barred Against Defendants.

As discussed, only one incident is alleged to have occurred within the Title VII and NJLAD limitation period: On November 28, 2023, United terminated Matthews. (ECF No. 1 ¶ 71.) "In *Morgan*, the Supreme Court held that, while discrete discriminatory acts are not actionable if they are time-barred, a hostile work environment claim is 'a series of separate acts that collectively constitute one "unlawful employment practice."'" *Deering v. Hackensack Bd. of Educ.*, Civ. A. No. 20-3890, 2021 WL 508608, *3 (D.N.J. Feb. 11, 2021) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). "The Supreme Court [has since] elaborated on *Morgan*, describing its holding as follows: '[A] hostile-work-environment claim is a single unlawful employment practice that includes every act composing that claim, whether those acts are independently actionable or not.'" *Id.* (quoting *Green v. Brennan*, 578 U.S. 547, 557 (2016))

---

[4] Even without Matthews' concession that her non-termination-based disparate treatment claim is time barred under either Title VII or the NJLAD, the Court would so hold. *See* 42 U.S.C. §§ 2000e-5(e), 2000e-5(f); *Taylor*, 2025 WL 854741, at *4; *see also Illas*, 2015 WL 778806, at *4. With respect to a disparate treatment claim under either Title VII or the NJLAD, all the alleged non-termination-based misconduct occurred beyond the relevant limitations period.

15

(internal quotation marks omitted). "The entire hostile environment claim may be considered timely, then, '[p]rovided that an act contributing to the claim occurs within the filing period.'" *Id.* (quoting *Morgan*, 536 U.S. at 117). "[E]ven if a claim of discrimination based on a single discriminatory act is time barred, that same act could still be used as part of the basis for a hostile-work-environment claim, [if] one other act that was part of that same hostile-work-environment claim occurred within the limitation period." *Id.* (quoting *Green*, 578 U.S. at 562 n.7).

"To allege a continuing violation, the plaintiff must show that all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable limitations period." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165–66 (3d Cir. 2013). "The conduct that occurred prior to the limitation period must have involved similar conduct by the same individuals, suggesting a consistent ongoing pattern." *Deering*, 2021 WL 508608, *4 (citing *Mandel*, 706 F.3d at 165–66). "The question, then, is whether the prior incidents are part of the same pattern and can be deemed to be part of the same hostile work environment claim." *Id.*

Here, Matthews argues that during the 392 days as a United employee, United subjected her to "a discriminatory course of conduct" and a "hostile environment [that] beg[an] with explicitly sexual harassment by a supervisor, followed by public humiliation, retaliatory scrutiny, coworker hostility, and institutional indifference after [she] complained, [which] ultimately culminat[ed] in her removal from the workplace and termination." (ECF No. 27 at 7 (citing ECF No. 1 ¶¶ 23–53).) Taking the events alleged in the Complaint in the light most favorable to Matthews, they set forth an ongoing pattern of sexual harassment and sex/gender discrimination. *Deering*, 2021 WL 508608, *4; *see also Domm v. Jersey Printing Co.*, 871 F. Supp. 732, 735 (D.N.J. 1994) ("A claim of sexual harassment is a form of sex discrimination actionable under

16

Title VII."). Altogether, Matthews has listed at least eighteen discriminatory acts since she began her job at United. (ECF No. 1 ¶¶ 23–27, 29, 32–38, 58, 62, 64, 71.) "These are plausibly alleged to amount to 'more than the occurrence of isolated or sporadic acts.'" *Deering*, 2021 WL 508608, *4 (quoting *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001)). In short, Matthews's termination is reasonably alleged to be sufficiently connected to the earlier acts to constitute a continuing violation, meaning her hostile work environment claim is timely under both Title VII and the NJLAD. *Id.*

Defendants argue "[d]iscrete acts are not actionable if time barred, even if related to timely allegations." (ECF No. 19-1 at 13 (citing *Morgan*, 536 U.S. at 110); *see also* ECF No. 30 at 6.) As Defendants themselves acknowledge, discrete acts include "termination, failure to promote, denial of transfer, or [a] refusal to hire." (ECF No. 19-1 at 13 (citing *Morgan*, 536 U.S. at 110).) The Third Circuit has further explained that retaliation is also a discrete act. *Heath v. City of Phila.*, Civ. A. No. 21-2309, 2022 WL 4298123, at *2 (3d Cir. Sept. 19, 2022). This simply means that discrete acts that occurred before either May 12, 2023 for purposes of Title VII, or July 7, 2023 for purposes of the NJLAD, like Hill's alleged retaliatory behavior on November 4, 2022, or Matthews's alleged retaliatory transfer to United's Command Center on November 16, 2022, may not be included in Matthews's hostile work environment claim. *Mandel*, 706 F.3d at 165–166 (citing *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006)). It does not mean, however, that Matthews does not have a hostile work environment claim anchored by her termination and

made up of various non-discrete, discriminatory acts that occurred before May 12, 2023, or July 7, 2023.

### C. Matthews's Disparate Treatment and Retaliation Claims Against Hill Are Time Barred.

While some of Hill's conduct (his non-discrete acts) can be considered for purposes of Matthews's hostile work environment claim because such conduct is sufficiently connected to her termination, other such conduct (Hill's time barred, discrete acts) cannot be factored into Matthews's hostile work environment claim, *Morgan*, 536 U.S. at 110, nor can such conduct be used to substantiate her retaliation and disparate treatment claims against Hill. *Taylor*, 2025 WL 854741, at *4; *Illas*, 2015 WL 778806, at *4. As Defendants correctly argue, "the last allegation that even concerns any conduct by Hill is alleged to have occurred on November 10, 2022." (ECF No. 19-1 at 15 (citing ECF No. 1 ¶ 45).) In sum, while Matthews's hostile work environment claim is not time barred under both Title VII and the NJLAD, Matthews cannot use a hostile work environment claim to bring forth otherwise untimely disparate treatment or retaliation claims against Hill.

### D. Matthews's Title VII and NJLAD Hostile Work Environment Claims Are Sufficiently Pleaded.

While Matthews's hostile work environments are timely, Defendants contend she has otherwise failed to "allege facts to plausibly link her discharge to her sex or gender." (ECF No. 30 at 11.) To state a hostile work environment claim under either Title VII or NJLAD, Plaintiff must show the complained-of conduct: "(1) would not have occurred but for the employee's protected status[] and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and the working environment is hostile or

18

abusive."[5] *Rich v. State*, 294 F. Supp. 3d 266, 281 (D.N.J. 2018) (quoting *Shepherd v. Hunterdon Dev. Ctr.*, 803 A.2d 611, 625 (N.J. 1993)).

To sufficiently plead causation, Matthews must put forth facts that show the complained-of conduct "would not have occurred but for" her sex or gender. *Rich*, 294 F. Supp. 3d at 281. However, she need only show "it is more likely than not that the harassment occurred because of" sex or gender. *Williams v. Hershey Co.*, Civ A. No. 20-9394, 2021 WL 1686568, at *3 (D.N.J. Apr. 29, 2021) (quoting *Velez v. Rocktenn Co.*, 2018 WL 3613393, at *6 (N.J. Super. Ct. App. Div. July 30, 2018)).

"Sometimes, the but-for causation element may be established by the nature of the harassment itself. An allegation of sexual harassment, for example, may be found adequate where it is based on harassing conduct that is itself sexual in nature." *DeSantis v. N.J. Transit*, 103 F. Supp. 3d 583, 594 (D.N.J. 2015) (citing *Lehmann v. Toys 'R' Us, Inc.*, 626 A.2d 445, 454 (N.J. 1993)). For instance, "[w]hen the harassing conduct is sexual or sexist in nature, the but-for element will automatically be satisfied." *Lehmann* 626 A.2d at 454; see also *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 63–67 (1986) (holding that sexual harassment is a form of sex discrimination actionable under Title VII). That is precisely the case here. The hostility Matthews faced began with the alleged sexual harassment by Hill, continued with the unfriendly comments from other United employees seemingly in reference to Matthews's situation with Hill, and ultimately concluded not only with an investigative finding that Hill "violated . . . [United's] guidelines," but also Hill's continued employment at United and Matthews's termination. (ECF

---

[5] Matthews argues that she has sufficiently alleged that she endured "severe or pervasive conduct." (ECF No. 27 at 7–9.) As Defendants rightly note, they "never argued failure to plead 'severe or pervasive conduct' as grounds for dismissal." (ECF No. 30 at 11.) Accordingly, the Court need not address this element for purposes of Defendants' Motion.

No. 1 ¶¶ 23–27, 29, 32–38, 51, 58, 62, 64, 69–71.) Drawing all reasonable inferences in Matthews's favor, those facts are sufficient for purposes of a hostile work environment claim based on sex or gender discrimination under both Title VII and the NJLAD.[6]

### E.  Matthews Has Sufficiently Pleaded a Retaliation Claim Against United.

Defendants argue Matthews's retaliation claims against United are fatally deficient because she "fails to link [her] protected activity to her termination." (ECF No. 19-1.) Matthews, however, insists she has sufficiently pleaded a causal nexus through a so-called pattern of antagonism. (ECF No. 27 at 11–12.)

The NJLAD makes it illegal "[f]or any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act[.]" N.J. Stat. Ann. § 10:5–12(d). When a NJLAD claim "arises from alleged retaliation, the elements of the cause of action are that the employee 'engaged in a protected activity known to the [employer,]' the employee was 'subjected to an adverse employment decision[,]' and there is a causal link between the protected activity and the adverse employment action." *Battaglia v. United Parcel Serv., Inc.*, 70 A.3d 602, 619 (N.J. 2013) (alteration in original) (quoting *Woods–Pirozzi v. Nabisco Foods*, 675 A.2d 684,

---

[6] "[I]ndividual liability of a supervisor for acts of discrimination or for creating or maintaining a hostile environment can only arise through the 'aiding and abetting' mechanism." *Cicchetti v. Morris Cnty. Sheriff's Off.*, 947 A.2d 626, 645 (N.J. 2008). "The NJLAD does not provide for individual liability for aiding and abetting if the employer is not found liable." *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 856 (3d Cir. 2016). Defendants' primary contention with respect to the aiding and abetting claim against Hill is with the supposed lack of a "principal violation." (ECF No. 19-1 at 29.) But because Matthews' hostile work environment claim brought under Title VII and the NJLAD is sufficiently pleaded and is not time barred, the alleged hostile work environment may serve as the principal violation. Therefore, Hill can be liable for creating or maintaining a hostile environment. *Cf. Lee v. ElectrifAi, LLC*, Civ A. No. 23-2239, 2024 WL 4182541, at *12 (D.N.J. Sept. 13, 2024) (finding the individual supervisor could not be held liable for the hostile work environment claim because the plaintiff had not adequately alleged a hostile work environment claim).

695 (N.J. Super. Ct. App. Div. 1996)). Similarly, to establish a *prima facie* case of retaliation "under Title VII, a plaintiff must tender evidence that: '(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action.'" *Moore v. City of Phil.*, 461 F.3d 331, 340–41 (3d Cir. 2006), *as amended* (Sept. 13, 2006) (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)).

Plaintiffs alleging retaliation generally plead causation by alleging facts showing: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism. *See Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 196 (3d Cir. 2015). Yet such allegations are not always required, provided that the facts alleged support a plausible inference of retaliation. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 792–93 & n.11 (3d Cir. 2016) (explaining that a complaint with sufficient factual allegations to raise an inference of causation between protected activity and adverse employment action may state a claim for retaliation despite a lack of temporal proximity); *see also Ellingsworth v. Hartford Fire Ins. Co.*, 247 F. Supp. 3d 546, 557 (E.D. Pa. 2017) ("Where there is no unusually suggestive temporal proximity, courts look to the intervening period for circumstantial evidence that gives rise to an inference of causation when considered as a whole." (citation modified)).

Drawing all reasonable inferences in Matthews's favor, despite the fact that her November 2023 termination occurred months after her protected activity—that Matthews reported Hill's sexual harassment to United's Human Resources Manager around November 2022 and subsequently spoke to Investigator Kohlman about Hill's sexual harassment and the hostile work environment in early December 2022—there is other evidence of retaliatory animus that percolated between Matthews's reporting and the adverse employment action. *Connelly v. Lane Const. Corp.*,

809 F.3d 780, 792–93 (3d Cir. 2016) (finding that, in complaining to management about unwanted advances from a coworker, plaintiff "alleged facts that could support a reasonable inference of a causal connection between her protected activity in May 2010 and the gradual deterioration of her relationship with her employer until she was laid off in October 2010."). For instance, after Matthews told Hill that he had been "misusing his authority and that [she] was going to file a report with . . . [United]," Hill responded by telling Matthews that nothing was going to happen to him as he had been with United for nineteen years. (ECF No. 1 ¶¶ 43–44.) This exchange, United's investigation finding Hill violated United's guidelines on April 12, 2023, Hill's continued employment at United and the lack of "remedial or corrective action" against Hill, and Matthews's termination support a reasonable inference of a causal connection between Matthews's protected activity and her firing. (*Id.* ¶¶ 43–44, 69–71.)

While a wide temporal gap between an employee's protected activity and firing generally weighs against an inference of a causal connection, a lack of temporal proximity is not dispositive. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000) (explaining that causation can be inferred from other evidence gleaned from the record as a whole and emphasizing (1) it is causation, not temporal proximity that is an element of a plaintiff's prima facie case, and (2) temporal proximity merely provides an evidentiary basis from which an inference can be drawn); *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 304 (3d Cir. 2007) (concluding that plaintiff's proof that his computer was vandalized, his exclusion from an important meeting, and his supervisor's look at him with disgust established causal link between complaints and adverse action, despite 9-month gap); *Connelly*, 809 F.3d at 792–93 (finding that given the seasonal character of her work, female truck driver's retaliation claim should not have been dismissed for failing to plead causal

connection between her sexual harassment complaint and employer's failure to rehire her almost one year later, given other evidence of retaliatory animus).

Defendants outline differences between the facts here and those in *Connelly*, but these differences do not persuade the Court that Matthews has failed to plead a causal nexus. (ECF No. 30 at 14–15.) Take, for instance, the supposed lack of "intervening facts showing a gradual deterioration in plaintiff's relationship with supervisors and coworkers between her protected activity and the adverse action" in *Connelly*. (*Id.* at 14 (citing 809 F.3d at 792).) Here, Plaintiff reported her sexual harassment and the hostile work environment around November 10, 2022. (ECF No. 1 ¶ 45, 49–50.) From then on, she was: (1) transferred to a different role at United, where she was forced to try "to remove a 300-pound dead body from one of . . . [United's] planes," even after explaining that she was incapable, (2) told by a supervisor that the supervisor's alteration of her report concerning the injury she suffered from having to try to move the dead body did not concern her, and (3) spoken to with hostility by various United colleagues, seemingly in reference to her complaints to United regarding her mistreatment. (*Id.* ¶¶ 53–56, 58, 62, 64.) And, *again*, at the time Matthews was terminated, United not only continued to employ Hill, but had "not taken any remedial or corrective action against" him, despite an investigative finding he had violated United's guidelines. (*Id.* ¶ 69–71.) Although the bulk of the intervening facts took place closer in time to the protected activity than Matthews's termination, there is enough at the motion to dismiss stage to infer that United terminated Matthews because she complained about Hill's sexual harassment and the hostile work environment at United.[7]

---

[7] With respect to the aiding and abetting claim against Hill, "[t]here is no direct *primary* individual liability under the NJLAD." *Gibbs v. Massey*, Civ. A. No. 07-3604, 2009 WL 838138, at *4 (D.N.J. Mar. 26, 2009) (emphasis in original) (citing *Cicchetti*, 947 A.2d at 645 (N.J. 2008)). The NJLAD instead imposes secondary liability for "any person, whether an employer or an employee or not,

### F. Matthews's Aiding and Abetting Claims Against United Fail.

As pleaded, Matthews has only raised one viable claim against Hill: a hostile work environment claim vis-à-vis the NJLAD's aiding and abetting mechanism. At the same time, Matthews asks the Court to allow her to hold United liable for aiding and abetting another defendant. But the hostile work environment claim against Hill is already channeled through the aiding and abetting framework. In other words, allowing an aiding and abetting claim against United would effectively allow for a kind of circular liability. But Matthews has not briefed the issue. (ECF No. 27.) Indeed, Matthews's Opposition does not address the aiding and abetting claims against United at all. (*Id.*) Accordingly, the Court need not answer whether the NJLAD facilitates this kind of tertiary liability. Therefore, the Court treats Matthews's aiding and abetting claim against United as waived. *See Doe ex rel. Doe*, 654 F. Supp. 3d at 387 (treating unrebutted

---

to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so." *Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 126 (3d Cir. 1999) (citing N.J. Stat. Ann. § 10:5–12(e)); *see also id.* ("However, individuals may be liable secondarily under an aiding and abetting theory of liability."). To state a claim for aiding and abetting, a plaintiff must plausibly allege that: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation." *Lauto v. Dover Pub. Sch. Dist.*, Civ. A. No. 21-18246, 2022 WL 3646573, at *6 (D.N.J. Aug. 24, 2022) (quoting *Cicchetti*, A.2d at 645). Matthews has failed to sufficiently plead the third element. Because the principal violation is retaliation—that United terminated Matthews because she complained about Hill's sexual harassment and the hostile work environment—Matthews must plead facts that show Hill "knowingly and substantially assist[ed]" in that. *Id.* While Matthews has alleged that Hill's behavior triggered Matthews's reporting, that is not enough. *Id.* According to Matthews, Hill's involvement in the overall Complaint ended on November 10, 2022—around a year before United allegedly terminated Matthews. (ECF No. 1 ¶ 45, 71.) Again, for purposes of clarity, Matthews's retaliation claim relates only to her termination because the supposed retaliatory transfer to United's Command Center is time barred. In short, because Matthews has failed to show that Hills aided and abetted United's retaliation, her NJLAD retaliation claim fails and is dismissed without prejudice. *Gibbs*, 2009 WL 838138, at *4.

arguments as waived and dismissing without prejudice).

### IV.    CONCLUSION

For the reasons set forth above, and for good cause having been shown, Defendants' Motion

to Dismiss (ECF No. 19) is **GRANTED IN PART** and **DENIED IN PART**. An appropriate order

follows.


Date: May 11, 2026                                      /s/ *Brian R. Martinotti*
                                                       **HON. BRIAN R. MARTINOTTI**
                                                       **UNITED STATES DISTRICT JUDGE**