**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHANTEL MATTHEWS,<br><br>Plaintiff,<br><br>v.<br><br>UNITED AIRLINES, INC., and FREDERICK HILL, individually,<br><br>Defendants. | Case No. 2:25-cv-12895 (BRM) (LDW)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are two pending motions: Defendants Frederick Hill ("Hill") and United Airlines, Inc.'s ("United") (together, "Defendants") respective motions for reconsideration (ECF Nos. 35, 36) of the Court's May 11, 2026 Opinion (ECF No. 33) and Order (ECF No. 34). Plaintiff Chantel Matthews ("Matthews") opposed the motions for reconsideration. (ECF No. 43.)

Having reviewed the parties' submissions filed in connection with the respective motions for reconsideration, and having held oral argument on August 13, 2026, and incorporating and considering those arguments herein, for the reasons set forth below and for good cause having been shown, Defendants' motions for reconsideration (ECF Nos. 35, 36) are **DENIED**.

## I. BACKGROUND

The factual and procedural background of this matter is well known to the parties and were previously detailed in the Court's Opinion issued on May 11, 2026. (*See generally* ECF No. 33.)

Accordingly, the Court will only summarize the information relevant to the motions now before the Court and incorporates the recitation of facts as stated in its prior Opinion. (*Id.*)

On January 9, 2026, Defendants moved the Court to dismiss Matthews's Complaint. (ECF No. 19.) Matthews opposed the motion to dismiss on February 11, 2026 (ECF No. 27) and Defendants jointly filed a reply on February 27, 2026 (ECF No. 30). On May 11, 2026, the Court issued an Opinion and Order, granting in part and denying in part Defendants motion to dismiss. (ECF Nos. 33, 34.) Relevant here, the Court held that Matthews's hostile work environment claims under Title VII and the NJLAD could proceed against United and Hill. *Matthews v. United Airlines, Inc*, Civ. A. No. 25-12895, 2026 WL 1283854, at *8–9, 9 n.6 (D.N.J. May 11, 2026).

Defendants filed their respective motions for reconsideration on May 22, 2026. (ECF Nos. 35, 36.) Matthews filed an opposition on June 22, 2026. (ECF No. 43.) The Court held oral argument on August 13, 2026. (ECF No. 53.)

## II. Legal Standard

Motions for reconsideration are governed by Federal Rule of Civil Procedure ("Rule") 59(e) and Local Rule 7.1(i). *United States v. Shumate*, Crim. A. No. 18-645, 2022 WL 2063337, at *1 (D.N.J. June 8, 2022) (citing *Copeland v. Twp. of Bellmawr*, Civ. A. No. 17-12104, 2019 WL 494454, at *2 (D.N.J. Feb. 8, 2019)). "Motions under Rule 59(e) and Local Rule 7.1(i) are governed by the same standard." *United States v. Rensing*, Crim. A. No. 12-663, 2022 WL 3227131, at *3 n.3 (D.N.J. Aug. 10, 2022), *aff'd*, No. 22-2585, 2023 WL 2364981 (3d Cir. Mar. 6, 2023) (citing *In re Vehicle Carrier Servs. Antitrust Litig.*, Civ. A. No. 13-3306, 2016 WL 1628879, at *2 (D.N.J. Apr. 25, 2016), *aff'd*, 846 F.3d 71 (3d Cir. 2017), *as amended* (Jan. 25, 2017)).

The comments for Local Rule 7.1(i) make clear, however, that "reconsideration is an

extraordinary remedy that is granted 'very sparingly.'" L. Civ. R. 7.1(i) cmt. 6(d) (quoting *Brackett v. Ashcroft*, Civ. A. No. 03-3988, 2003 WL 22303078, *2 (D.N.J. Oct. 7, 2003)); *see also Langan Eng'g & Env't Servs., Inc. v. Greenwich Ins. Co.*, Civ. A. No. 07–2983, 2008 WL 4330048, at *1 (D.N.J. Sept. 17, 2008) (explaining a motion for reconsideration under Rule 7.1(i) is "'an extremely limited procedural vehicle,' and requests pursuant to th[is] rule[] are to be granted 'sparingly'"); *Fellenz v. Lombard Inv. Corp.*, 400 F. Supp. 2d 681, 683 (D.N.J. 2005). A motion for reconsideration "may not be used to relitigate old matters, nor to raise arguments or present evidence that could have been raised prior to the entry of judgment." *P. Schoenfeld Asset Mgmt., LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J. 2001). Instead, Rule 7.1(i) directs a party seeking reconsideration to file a brief "setting forth concisely the matter or controlling decisions which the party believes the Judge has overlooked." L. Civ. R. 7.1(i); *see also Bowers v. Nat'l Collegiate Athletic Ass'n*, 130 F. Supp. 2d 610, 612 (D.N.J. 2001) ("The word 'overlooked' is the operative term in the Rule.").

To prevail on a motion for reconsideration, the moving party must file the motion within fourteen days of the entry of order or judgment[1] showing at least one of the following grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [made its initial decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *See* L. Civ. R. 7.1(i) ("[A] motion for reconsideration shall be served and filed within 14 days after the entry of the order or judgment on the original motion by the Judge or Magistrate Judge."); *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)). A

[1] However, pursuant to Rule 59(e), "[a] motion to alter or amend [a] judgment must be filed no later than *28 days* after [the] entry of the judgment." *See Pellicano v. Blue Cross Blue Shield Ass'n*, 540 F. App'x 95, 97 (3d Cir. 2013) (emphasis added).

court commits clear legal error "only if the record cannot support the findings that led to that ruling." *ABS Brokerage Servs. v. Penson Fin. Servs., Inc.*, Civ. No. 09-4590, 2010 WL 3257992, at *6 (D.N.J. Aug. 16, 2010) (citing *United States v. Grape*, 549 F.3d 591, 603–04 (3d Cir. 2008)). "Thus, a party must . . . demonstrate that (1) the holdings on which it bases its request were without support in the record, or (2) would result in 'manifest injustice' if not addressed." *Id.* Moreover, when the assertion is that the court overlooked something, the movant must point to some dispositive factual or legal matter that was presented to the court. *See* L. Civ. R. 7.1(i).

Stated simply, "[m]ere 'disagreement with the Court's decision' does not suffice." *ABS Brokerage Servs.*, 2010 WL 3257992, at *6 (quoting *P. Schoenfeld*, 161 F. Supp. 2d at 353); *see also United States v. Compaction Sys. Corp.*, 88 F. Supp. 2d 339, 345 (D.N.J. 1999) ("Mere disagreement with a court's decision normally should be raised through the appellate process and is inappropriate on a motion for [reconsideration]."); *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.*, 680 F. Supp. 159, 163 (D.N.J. 1988); *Schiano v. MBNA Corp.*, Civ. A. No. 05-1771, 2006 WL 3831225, at *2 (D.N.J. Dec. 28, 2006) ("Mere disagreement with the Court will not suffice to show that the Court overlooked relevant facts or controlling law and should be dealt with through the normal appellate process." (citations omitted)).

## III. DECISION

### A. United's Motion for Reconsideration

United suggests two reasons that the Court should reconsider its decision. First, United argues the Court erred by using Matthews's termination as the anchor for her supposedly untimely hostile work environment claim. (ECF No. 36-1 at 4–8.) Second, United contends the Court erred in applying the "ongoing pattern" standard to Matthews's claims. (*Id.* at 8–9.)

According to Matthews, however, the Court's decision to allow her to anchor her hostile work environment claim is consistent with both U.S. Supreme Court precedent and controlling Third Circuit law. (ECF No. 43 at 6–7.) Matthews argues that, at best, Defendants have identified a debatable question of law, which is not the equivalent of clear error. (*Id.* at 8.) Furthermore, Matthews posits that United's "ongoing pattern" argument is essentially a re-argument of the Rule 12(b)(6) sufficiency question they already lost. (*Id.* at 8–9.) While United insists that it was erroneous for the Court to rely on "different acts, committed by different actors, separated by a substantial gap in time" (ECF No. 36-1 at 9), Matthews contends it was correct and, indeed, required for the Court to "read those allegations as part of the same harassment-driven hostility." (ECF No. 43 at 9.)

As Matthews points out, it is evident that United seeks to use its motion for reconsideration to relitigate arguments the Court already considered and rejected. (*Id.* at 4–5.) But a motion for reconsideration is not an invitation for the losing party to re-litigate old matters. *P. Schoenfeld Asset Mgmt., LLC*, 161 F. Supp. 2d at 352.

**1. Matthews's termination may serve as the anchor for her hostile work environment claim.**

After considering United's argument that "[d]iscrete acts are not actionable if time barred, even if related to timely allegations," the Court nonetheless concluded that "Matthews does . . . have a hostile work environment claim anchored by her termination and made up of various non-discrete, discriminatory acts that occurred before May 12, 2023, or July 7, 2023." *Matthews*, 2026 WL 1283854, at *8 (alteration in original) (citing ECF No. 19-1 at 13). The Court made this conclusion having considered United's argument that Matthews's "termination . . . cannot be deemed a part of the same unlawful employment practice as any other allegation." (*Id.* at *6 (citing ECF No. 19-1 at 20–21).) Nevertheless, United raises the same argument in its motion for

reconsideration. (ECF No. 36-1 at 4–8.) Put simply, United does precisely what United should not on a motion for reconsideration—ask the Court to revisit a legal issue it already decided based on the Court's reading of the controlling law. *P. Schoenfeld Asset Mgmt., LLC*, 161 F. Supp. 2d at 352. Dissatisfied with the Court's interpretation of the law and hoping the Court will now rule in its favor, United calls the Court's analysis legal error but cites no controlling decision the Court overlooked. L. Civ. R. 7.1(i) (directing a party seeking reconsideration to file a brief "setting forth concisely the matter or controlling decisions which the party believes the Judge has overlooked"). Put another way, United merely offers its preferred reading of Supreme Court precedent this Court already interpreted in its May 11, 2026 Opinion and lists various non-binding Third Circuit cases. On that basis alone, the Court rejects United's attack on the Court's decision to anchor Matthews's hostile work environment claim with her termination. However, even were the Court to set aside United's attempt to relitigate this issue, the Court also rejects these attacks because they are driven by United's misinterpretation of Supreme Court precedent.

Here, U.S. Supreme Court precedent supports this Court's holding that Matthews's hostile work environment claim is anchored by her termination. In *Green v. Brennan*, a constructive-discharge case, the U.S. Supreme Court explained that the employee's resignation is the culmination of the intolerable discriminatory conduct of the employer, such that the relevant limitation period starts with the employee's resignation. 578 U.S. 547, 556–57 (2016) (noting in a parenthetical that a constructive discharge involves both an employee's decision to leave and the precipitating conduct).[2] The claim at issue here is a hostile work environment claim anchored by

---

[2] The Court acknowledges that there is a line of precedent supporting United's position. For example, in *Nat'l R.R. Passenger Corp. v. Morgan*, the U.S. Supreme Court held "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." 536 U.S. 101, 113 (2002). Five years after *Morgan*—in an unpublished

Matthews's termination, which is in some ways distinct from a constructive-discharge claim. Still, the principle laid down in *Green* applies with equal force.

Here, the hostile work environment claim is made up of Matthews's wrongful termination and other various acts that contributed to the hostile work environment. (ECF No. 1 ¶¶ 23–27, 29, 32–38, 58, 62, 64, 71.) Accordingly, persuaded by the reasoning in *Green*, the Court concluded that under the continuing violation doctrine, Plaintiff may anchor her hostile work environment claim to her termination. *Matthews*, 2026 WL 1283854, at *7–8 (citing *Green*, 578 U.S. at 557, 562 n.7).

As the Fourth Circuit has explained, "[if] a constructive discharge can be part and parcel of a discriminatory pattern of conduct, [there] [is] no reason that a discrete act [that falls within the limitations period] cannot." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 223 (4th Cir. 2016). This is particularly so here given the anchoring termination occurred within the limitations period. *Morgan*, 536 U.S. at 102 (cabining *Morgan*'s holding to "discrete discriminatory acts . . . [that] are time barred"). As another court in the Third Circuit has likewise concluded, "the timely discrete act[] that [Plaintiff] references may form the basis of a hostile work environment claim, such that the continuing violation doctrine would permit the Court to consider earlier hostile acts that fall outside of the limitations period." *Henderson v. Pa. State Univ.*, Civ. A. No. 21-0872, 2022 WL 838119, at *7–9 (M.D. Pa. Mar. 21, 2022).

---

decision—the Third Circuit concluded that a timely termination was not part of a continuing violation. *Zankel v. Temple Univ.*, 245 F. App'x 196, 199 (3d Cir. 2007). Finally, in *O'Connor v. City of Newark*, a published Third Circuit decision, the Third Circuit explained that *Morgan* created a "bright-line distinction" between discrete acts and hostile work environment claims. 440 F.3d 125, 127 (3d Cir. 2006). However, current Supreme Court precedent, exemplified in *Green*, can be harmonized with this Court's holding in *Matthews*—that Matthews's claims are not time barred, based on her termination date.

Nonetheless, United argues that *Heath v. City of Philadelphia* teaches that the continuing violations doctrine does not apply to either untimely *or* timely discrete acts. (ECF No. 36-1 at 5–6 (citing Civ. A. No. 21-2309, 2022 WL 4298123, at *2 (3d Cir. Sept. 19, 2022)).) *Heath*, however, is "not an opinion of the full Court and . . . does not constitute binding precedent." *Id.* at *n*. In other words, *Heath* is not a "controlling decision[]" the Court "overlooked." L. Civ. R. 7.1(i). Moreover, United did not cite *Heath* in either its motion to dismiss or its reply in further support of its motion to dismiss. (ECF Nos. 19-1, 30); *see also Talsania v. Kohl's Dep't Store*, Civ. A. No. 05-3892, 2009 WL 1562325, at *2 (D.N.J. June 3, 2009) (holding an "authority[] presented for the first time in support of a motion for reconsideration[] cannot demonstrate clear error").

As it stands, "decisions by the Courts of Appeals for the Fourth, Eleventh, and District of Columbia Circuits . . . hold[] that a non-time-barred discrete act may constitute an act contributing to a hostile work environment claim and therefore, may properly be the basis for applying the continuation violation doctrine." *Lee v. Mission Chevrolet, Ltd.*, Civ. A. No. 16-034, 2017 WL 4784368, at *8–9 (W.D. Tex. Oct. 23, 2017) (collecting cases). In the face of this consensus among three Courts of Appeals and because of United's inability to point to a single controlling opinion from the Third Circuit (or the U.S. Supreme Court) that forecloses this Court's holding, United has failed to show that the Court erred by allowing Matthews's termination to anchor for her hostile work environment claim. As Matthews rightly explained, United has at best identified a debatable question of law—but that is not the proper basis for a motion for reconsideration.

**2. The Court properly applied the "Ongoing Pattern" standard to Matthews's claims.**

After reviewing Matthews's Complaint, the Court concluded Matthews could rely on the continuing violations doctrine to rebut Defendants' argument that her Title VII and NJLAD claims are time barred because it found that "Matthews's termination [was] . . . sufficiently connected to"

"at least eighteen discriminatory acts since she began her job at United." *Matthews*, 2026 WL 1283854, at *6 (citing ECF No. 1 ¶¶ 23–27, 29, 32–38, 58, 62, 64, 71). Dissatisfied with that result, United asks the Court to second guess its decision.

Just as before (ECF No. 30 at 6–7), United seeks to attack the chain of events the Court found sufficient for purposes of identifying an ongoing pattern (ECF No. 36-1 at 8–9). First, United points out that "Paragraphs 23–27, 29, and 32–38 concern Hill's alleged sexual comments and text messages[,] . . . which are alleged to have occurred in November 2022." (*Id.* (citing ECF No. 1 ¶¶ 23–27, 29, and 32–38).) Second, United criticizes the Court's reliance on the interactions laid out in "Paragraphs 58, 62, and 64" because they supposedly "concern unrelated, isolated interactions involving different employees – all of which occurred in or before December 2022[] and are in no way sexual or otherwise discriminatory in nature." (*Id.* (citing ECF No. 1 ¶¶ 58, 62, 64).) Third, United highlights the "remaining paragraph" in the chain, "Paragraph 71, alleges the sole timely allegation that United (only) terminated [Matthews] in November 2023." (*Id.* (citing ECF No. 1 ¶ 71).) Neither the temporal gap, nor the fact that the chain of events includes discriminatory acts by different actors compels the Court to revisit its finding that Matthews sufficiently pleaded an ongoing pattern of sexual harassment and sex/gender discrimination.

First, the Court already addressed United's critique of the time gap between the events making up the ongoing pattern and concluded that the eighteen discriminatory acts alone constitute "more than the occurrence of isolated or sporadic acts." *Matthews*, 2026 WL 1283854, at *8 (citing *Deering v. Hackensack Bd. of Educ.*, Civ. A. No. 20-3890, 2021 WL 508608, *4 (D.N.J. Feb. 11, 2021)). While United focuses on the period between the discriminatory events that occurred in early December 2022 and Matthews's termination on November 28, 2023, the Court remains persuaded the alleged violations are of the sex/gender-based discrimination variety, which recurred

with sufficient frequency to comprise a series of ongoing discriminatory conduct. *West v. Phila. Elec. Co.*, 45 F.3d 744, 755 n.9 (3d Cir. 1995) (recognizing that courts should consider at least the following factors to assess whether the harassment is an "on-going pattern" of harassment—"(1) subject matter—whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; [and] (2) frequency—whether the acts are recurring or more in the nature of isolated incidents").[3] To be sure, if acts are too spaced out, there can be no continuous violation. *See, e.g.*, *Carroll v. Del. River Port Auth.*, Civ. A. No. 13-2833, 2014 WL 116338, at *2 (D.N.J. Jan. 10, 2014). But, as the Court has already decided, that is not the case here. *Matthews*, 2026 WL 1283854, at *8.

Matthews alleges that throughout the 392-day period she worked for United, United frequently subjected her gender/sex-based discrimination. (ECF No. No. 1 ¶¶ 23–27, 29, 32–38, 58, 62, 64, 71); *cf. Carroll*, 2014 WL 116338, at *2 (finding no continuous violation where plaintiff alleged *only three acts over the course of nine years*); *Verdin v. Weeks Marine Inc.*, 124 F. App'x 92, 96 (3d Cir. 2005) ("[T]he comments and events that Verdin relies on to meet the pervasive and regular requirement do not demonstrate the ongoing pattern of racially offensive conduct that is required to show a prima facie case[] because [t]he majority of the events which Verdin relies upon occurred in 1998, *followed by a two-year gap* and a final comment by Bearb on April 28, 2000." (emphasis added)). The less than one-year gap between the events that occurred in early December 2022 and Matthews's termination on November 28, 2023, is not enough to doom the finding of an ongoing pattern of sex/gender-based harassment. United has not put forth a single controlling case that holds otherwise. (ECF No. 36-1 at 8–9.)

[3] After *Morgan*, the prior degree of permanence factor is no longer a required factor. 706 F.3d at 166–67.

Next, United suggests that the interactions involving employees other than Hill "are in no way sexual or otherwise discriminatory in nature." (*Id.* at 9 (citing ECF No. 1 ¶¶ 58, 62, 64).) That argument misunderstands the law and downplays the facts. For example, Matthews alleges she received an email from United's Transitional Duty Manager Whitney V. ("Whitney"), which instructed Matthews to "contact [Whitney] regarding [Matthews's] light duty." (ECF No. 1 ¶ 61.) After contacting Whitney on the phone, Whitney "answered curtly stating, 'You're the one I heard about.'" (*Id.* ¶ 62.) After Matthews asked Whitney what she meant by that statement, Whitney answered, "'Never mind. I will be sending your correspondence in the mail,' and abruptly hung up" the phone. (*Id.*) This interaction is, of course, different than the interaction Matthews had with Hill, who was unrelenting with his unwelcome advances. (*Id.* ¶¶ 23–27, 29, 32–38.) But that does not mean Whitney's interaction was not an instance of gender/sex-based discrimination. As the Court previously explained, there is more than one kind of sex/gender-based harassment. *Matthews*, 2026 WL 1283854, at *9 (explaining that harassment based on sex can stem from harassing conduct that is sexual or sexist in nature). Construing the Complaint in the light most favorable to Matthews, *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), the Court read the comments from Matthews's supervisors not just as unfriendly comments but ones that are "seemingly in reference to Matthews's situation with Hill." *Matthews*, 2026 WL 1283854, at *9. Put simply, Hill's sexual advances and the unfriendly comments in reference to those advances are sufficiently similar to show an ongoing pattern of sex/gender-based harassment. United's mere *ipse dixit* disagreement with the allegations cannot and does not alter the Court's analysis on a motion for reconsideration.

Finally, United tries to argue that the Court erred because the Court based the continuing violation on conduct performed by different individuals. *Id.* at *7 ("The conduct that occurred prior

to the limitation period must have involved similar conduct by the same individuals, suggesting a consistent ongoing pattern." (quoting *Deering*, 2021 WL 508608, at *4).) But in making this argument, United disregards the underlying principle. Under New Jersey (and federal) law, United may be vicariously liable for Hill's unlawful harassment because United has empowered Hill to take tangible employment actions against Plaintiff. *See Cicchetti v. Morris Cnty. Sheriff's Off.*, 947 A.2d 626, 645 (N.J. 2008) ("[A] supervisor's behavior, either through acts of omission or commission, may form the basis for a hostile work environment claim to be made against the employer . . . ."); *Vance v. Ball State Univ.*, 570 U.S. 421, 440 (2013) ("[A]n employer may be vicariously liable for a supervisor's harassment."). Employers are not vicariously liable for every action by each individual employee—rather it is only liable only for the actions of employees "empowered by the employer to take tangible employment actions against the victim," *i.e.* a "supervisor." *Vance*, 570 U.S. at 450; *Cicchetti*, 947 A.2d at 644–45 ("[A]n employer may be held liable for creating or maintaining a hostile work environment[] . . . when the employer grants a supervisor authority to control the workplace and the supervisor abuses that authority to create a hostile environment . . . .").[4]

[4] While under New Jersey law a supervisor for purposes of vicarious liability is a worker with "authority to control the workplace," *Cicchetti*, 947 A.2d at 644–45, under federal law, a supervisor is more than an employee given supervisory authority over subordinates. *Vance*, 570 U.S. at 424. As alleged, under federal law (and by implication, New Jersey law) Hill, Whitney, and Amy are all supervisors for purposes of vicarious liability because they can each "make tangible employment decisions." *Id.* at 432. Hill, for instance, "transferr[ed] [Matthews]" to United's Command Center, where she had the new responsibility of removing a "300-pound dead body" from one of United's planes. (ECF No. 1 ¶ 53.) *Vance* teaches that actions like reassignment are an example of a tangible employment action. 570 U.S. at 431. Whitney and Hill are likewise supervisors. Like Hill, Amy and Whitney "had the ability to take adverse employment actions against Plaintiff" such that they constitute supervisors. (ECF No. 1 ¶¶ 17, 19.) To the extent the allegation centered on the "employee that [Matthews] did not know" cannot stand for purposes of vicarious liability because Matthews has not pleaded enough to demonstrate that "female employee[]" was a supervisor, such a result does not disturb the Court's finding that there was an

United has failed to demonstrate how the Court erred by using Matthews's termination as the anchor for her hostile work environment claim. United also failed to show the Court's finding—that Matthews's hostile work environment claim is timely given the applicability of the ongoing violation doctrine—amounts to legal error. Accordingly, United's motion for reconsideration is **DENIED**.

**B. Hill's Motion for Reconsideration**

In his motion for reconsideration, Hill argues the court erred by (1) anchoring Matthews's hostile work environment claim to her termination absent any contributing act by Hill within the limitations period and (2) overlooking the heightened standard needed to attach aiding and abetting liability on the part of Hill. (ECF No. 35-1 at 5–8.)

Matthews argues, however, that it is of no moment that Hill's final act of sexual harassment falls outside the limitations period. (ECF No. 43 at 10–12.) Because United engaged in an ongoing pattern of sex/gender-based discrimination, which incorporates Hill's conduct based on a theory of vicarious liability, Matthews asserts that under New Jersey law, Hill can be held secondarily liable for conduct that otherwise falls beyond the limitations period. (*Id.* at 13 ("New Jersey law permits a supervisor to aid and abet his own creation of a hostile work environment . . . .").) Matthews employs a similar argument to rebut Hill's critique of the Court's assessment that Hill did aid and abet United's creation of a hostile work environment: "Hill's own harassment is quintessentially active and purposeful, and it is . . . part of the single hostile work environment practice anchored by Matthews's termination." (*Id.* at 17.)

ongoing pattern of sex/gender-based discrimination. (*Id.* ¶ 64.) Even excluding that incident, there remains a string of incidents involving sex/gender-based discrimination that occurred with sufficient frequency. *West*, 45 F.3d at 755 n.9.

The Court begins with Hill's first argument. Hill's argument is premised on a misconception of the law, which is perhaps understandable given the interplay between vicarious liability and secondary liability. Still, Hill's misconception provides no reason for the Court to revisit its decision.

Again, here, Matthews has pleaded a hostile work environment claim against United. *See supra* Section III.A. That claim is made up of mostly non-discrete acts and is anchored by Matthews's termination, which *is* a timely discrete act. *See supra* Section III.A. Given the theory of vicarious liability, which allows Matthews to attribute much of Hill's conduct to United, the hostile work environment claim against United includes Hill's acts of sexual harassment. *See id.*

According to Hill, however, because the anchoring event—Matthews's termination—involved only Plaintiff and United, the state hostile work environment claim against Hill is nonetheless time-barred. (ECF No. 35-1 at 6–8 (citing *Settineri v. PNC Bank Corp.*, 854 A.2d 922, 926–27 (N.J. Super. Ct. App. Div. 2004)).)[5]

Beyond that argument's misunderstanding of secondary liability, Hill's reliance on *Settineri* to make that argument fails to persuade. In *Settineri*, the Appellate Division affirmed and relied on the trial judge's finding that PNC Bank, the plaintiff's employer, did not engage in "conduct [that] [was] . . . so intolerable that a reasonable person would be forced to resign, rather than to continue to endure it." *Settineri*, 854 A.2d at 927. Unlike here, in *Settineri*, there was no primary violation the plaintiff could have relied on. In other words, there would be no way to raise a hostile work environment claim through the aiding and abetting mechanism against the

---

[5] Defendants did not once cite *Settineri* in either their motion to dismiss (ECF No. 19-1) or their reply (ECF No. 30). As already explained, an "authority[] presented for the first time in support of a motion for reconsideration[] cannot demonstrate clear error." *Talsania*, 2009 WL 1562325, at *2.

individual defendants without a primary violation. Indeed, the Appellate Division did not once discuss the aiding and abetting framework. *Settineri*, 854 A.2d at 922–31. That is perhaps unsurprising because when Settineri was decided, the N.J. Supreme Court had "yet to address the meaning of 'aiding and abetting' under the [NJ]LAD." *Tarr v. Ciasulli*, 853 A.2d 921, 928 (N.J. 2004). As such, *Settineri* does not alter the Court's conclusion that, as pleaded, Hill may be secondarily liable for creating a hostile work environment even though Matthews's termination involved only Plaintiff and United.[6] 854 A.2d at 927.

Finally, while Hill suggests that the Court overlooked the heightened standard requiring "active and purposeful conduct" for NJLAD aiding-and-abetting liability, the Court disagrees. (ECF No. 35-1 at 13.) Once again, "Matthews has only raised one viable claim against Hill: a hostile work environment claim [based on sex/gender-discrimination] vis-à-vis the NJLAD's aiding and abetting mechanism." *Matthews*, 2026 WL 1283854, at *11. Here are some but not all of the allegations raised by Matthews:

- Hill greeted Matthews on her first day at United by saying "I've never seen anyone like you before. [United] saved the best for last . . . . Welcome to United. You are fine as hell. Please complete your employee profile at any computer desk." (ECF No. 1 ¶ 23.)
- Also on her first day, Hill not only approached Matthews and asked if she needed help, but also asked, "[D]o you model?" (*Id.* ¶ 24.)

[6] "While it is admittedly an 'awkward theory' to hold an individual liable for aiding and abetting his own conduct, it would thwart [NJ]LAD's broad and remedial purpose, and make little sense, to construe it as permitting 'individual liability for a supervisor who encourages or facilitates another employee's harassing conduct, while precluding individual liability for the supervisor based on his or her own discriminatory or harassing conduct." *Brown-Marshall v. Roche Diagnostics Corp.*, Civ. A. No. 10-5984, 2013 WL 3793622, at *7 (D.N.J. July 19, 2013) (Bumb, C.J.) (quoting *Rowan v. Hartford Plaza Ltd.*, No. A-0107-11T3, 2013 WL 1350095, at *7 (N.J. Super. Ct. App. Div. Apr. 5, 2013)).

- On her second day at United, Hill "improperly accessed [Matthews's] phone number from her personnel file and sent [her] a text message asking [her] to send him her Instagram profile." (*Id.* ¶ 25.)
- After Matthews went to use the bathroom, Hill "was waiting for [Matthews] in the hallway and asked [her] if he could take her on a date." (*Id.* ¶ 27.)

These are classic examples of sex/gender-based harassment and are in fact "active and purposeful conduct." *Tarr*, 853 A.2d at 929. Indeed, Hill's real disagreement is likely the Court's treatment of the temporal gap between Hill's conduct and Matthews's termination. (ECF No. 35-1 at 10–11.) But, again, that disagreement stems from a misunderstanding of secondary liability. As Hill recites, the "Court . . . determined that 'the alleged hostile work environment' could serve as the principal violation' for purposes of asserting her hostile work environment claim against Hill through the aiding and abetting mechanism." (*Id.* (quoting *Matthews*, 2026 WL 1283854, at *9 n.6).) Because of the ongoing violations doctrine and the doctrine of vicarious liability, the hostile work environment claim against United is composed of acts by Hill, United, and other supervisors. *See supra* Section III.A. The material gap in time, then, is not the period "between November 11, 2022 (the date of the last allegation made against [Hill]) and [Matthews's] termination on November 28, 2023." (ECF No. 35-1 at 10.) That is because there are other allegations of sex/gender-based discrimination by other supervisors at United between that period. (ECF No. 1 ¶¶ 58, 62.) More accurately described, the material gap in time is the period between the discriminatory events that occurred in early December 2022 and Matthews's termination on November 28, 2023. That correction aside, what is more important for purposes of Hill's motion for reconsideration is Hill's failure to show that the Court's consideration of the temporal gap was

legal error. *See supra* Section III.A (citing *Carroll*, 2014 WL 116338, at *2; and then citing *Verdin*, 124 F. App'x at 96).

"[R]econsideration is an extraordinary remedy that is granted 'very sparingly.'" L. Civ. R. 7.1(i) cmt. 6(d) (quoting *Brackett*, 2003 WL 22303078, *2). Neither Hill nor United have put forth arguments to justify the grant of that "extraordinary remedy." *Id.* Accordingly, like United, Hill's motion for reconsideration is **DENIED**.

## IV. CONCLUSION

For the reasons set forth above, and for good cause having been shown, Defendants' motions for reconsideration (ECF Nos. 35; 36) are **DENIED**. An appropriate order follows.

Date: September 1, 2026

***/s/ Brian R. Martinotti***
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**